# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL ORTEGA, | ) |
| Petitioner, | ) ) ) |
| vs. | ) Case No. 18 C 3631 |
| JACQUELINE LASHBROOK, Warden, | ) ) ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Michael Ortega was convicted by an Illinois jury of first-degree murder. A Cook County judge sentenced him to forty-six years in prison. Having exhausted direct appeals and state collateral challenges, Ortega has petitioned for a writ of habeas corpus under 28 U.S.C. § 2254. He contends that (1) there was insufficient evidence to sustain his conviction; (2) his trial counsel was ineffective for failing to call an expert witness regarding eyewitness identification; (3) his trial counsel was also ineffective for failing to investigate alibi witnesses; and (4) the prosecution violated his constitutional rights by making certain closing arguments. For the reasons below, the Court overrules all of Ortega's claims but the third. The Court is not prepared to dismiss that claim and instead will appoint counsel to investigate its viability.

## Background

Michael Ortega was convicted of murdering Kenneth Lawson. The indictment alleged that the killing took place on the evening of July 12, 2003 outside a house on

South Houston Avenue in Chicago. Lawson was attending a party at the house, which belonged to Shirly McBride, with two of his friends, Jeremy Howard and Marlin Willis. Howard and Willis each testified to the events of that evening. According to Howard and Willis, the three men met up at a gas station nearby and drove Lawson's van to the party. When they arrived, the three men parked directly in front of the house. For a while, Howard, Willis, and Lawson socialized with several others in the house's front yard. Some of the partygoers sat on the front porch while others stood in the yard or sat in the van.

A neighboring house was also hosting a party. At some point, Lawson, Howard, and McBride went to the party next door. They stayed for only a short while before returning to McBride's yard. Howard testified that they did not encounter any problems at the neighboring house. A few minutes later, Lawson and McBride went back over to the neighboring party. This time, McBride returned almost immediately but Lawson stayed for several minutes. He ultimately returned to McBride's house without incident.

Within a few minutes of Lawson's return, a Hispanic or Latino man wearing a bandana approached from the direction of the neighboring house. The man immediately confronted Lawson, made a gesture with his hands that Howard and Willis interpreted to be a gang sign, and said either "Latin King" or "Almighty Latin King." *Compare* Trial Tr. pt. 2, dkt. no. 10-19, at 18, *with id.* at 104. Lawson apparently told the man to get away from him. According to Howard and Willis, a heated argument ensued, though there was no physical altercation. After several minutes, the man in the bandana stormed away, warning the group that he would be back and, according to Howard, that they should not be there when he returned.

2

The group began collecting their things and piling into Lawson's van to leave. But before they could, the man in the bandana returned, this time with another Hispanic or Latino man. The second man wore a red shirt and, according to Howard and Willis, asked the man in the bandana, "Which one?" *See id.* at 26, 113. Another argument between Lawson and the two men ensued. According to Willis and Howard, Lawson eventually attempted to disengage by walking away from the altercation.

When Lawson began to walk away, Howard and Willis testified, the man in the red shirt drew a revolver and fired one shot toward Lawson. Lawson continued walking for a moment before collapsing. The shooter fled. Willis and Howard stayed with Lawson until paramedics arrived, then followed the ambulance to Christ Hospital. Lawson was later pronounced dead as a result of injuries sustained from the gunshot.

About two weeks later, on July 25, a police detective presented Howard with a photo array of six individuals. Howard identified Ortega as the shooter. On August 5, Howard was presented with an in-person lineup, this time including four men. Of the four, he again identified Ortega as the shooter. On August 7, Willis, who was in custody on an unrelated traffic violation, was also presented with an array of six photos. From the six photos on the page, he too identified Ortega as the shooter. Both men testified that they had spoken to no one about these identifications ahead of time.

Ortega was arrested and charged with Lawson's murder. His trial occurred in November 2004. The prosecution called Howard and Willis, who testified that they saw Ortega fire the gunshot that killed Lawson. Ortega's attorney, Michael Johnson, argued mistaken identity. Although Ortega testified that he could not remember where he was on the night of Lawson's murder, Johnson argued that Howard and Willis had to be

3

mistaken. On cross-examination, Johnson elicited testimony from Willis and Howard that they had each drank some alcohol the night of the shooting and confronted them with somewhat inconsistent descriptions about the shooter's clothes and physique that they had given during the initial investigation.

Ultimately, after a three-day trial, the jury convicted Ortega of murder. Ortega appealed, arguing that there was insufficient evidence to convict him, that he had received ineffective assistance of counsel, and that his constitutional rights have been violated when prosecutors made certain prejudicial remarks about his character for dishonesty during closing arguments. The Illinois appellate court affirmed the conviction, rejecting Ortega's first two arguments and holding that the third had been forfeited when Ortega's attorney failed to object at trial. *See* Ex. A to State Court Record, *People v. Ortega*, 369 Ill. App. 3d 1048, 932 N.E.2d 1038 (table), dkt. no. 10-1, at 11. The Illinois Supreme Court denied Ortega's petition for leave to appeal, which was based on the same three grounds. *See* Ex. H to State Court Record, *People v. Ortega*, 225 Ill. 2d 662, 875 N.E.2d 1120 (table) (2007), dkt. no. 10-8.

Ortega then filed a pro se postconviction petition in Illinois state court. He again alleged that his trial counsel, Johnson, had been ineffective for failing to investigate and present an alibi defense. Specifically, Ortega claimed that he had told Johnson that his mother and sister, Louise and Leticia Ortega, would have testified that he was at Louise's home at the time of the murder, but that Johnson dismissed their testimony as insufficiently credible without other corroborating evidence. Ortega presented affidavits from Louise and Leticia supporting his argument and asserting that Johnson had never interviewed them. These affidavits also mentioned at least one other potential witness:

4

Louise's then-boyfriend Benny, who was present at Louise's home until about 12:30 a.m. on the night of Lawson's murder.

The circuit court dismissed Ortega's petition at the first stage of postconviction proceedings because it found the petition to be patently without merit. *See* Ex. B to State Court Record, *People v. Ortega*, 399 Ill App. 3d 1222, 990 N.E.2d 931 (table) (2010), dkt. no. 10-2, at 1, 4; *see also* 725 ILCS 5/122-2.1 (describing first-stage review). Ortega appealed with the help of appointed counsel, and the Illinois appellate court reversed, concluding that Ortega's postconviction petition "did not lack an arguable basis in either law or fact." *Id.* at 7. It remanded to the circuit court to continue to the second stage of Illinois postconviction review. *Id.* at 8.

Appointed counsel filed a supplemental postconviction petition on Ortega's behalf focused on the ineffective assistance of counsel claims. This supplemental petition included new affidavits from Louise and Leticia Ortega. Ortega's mother, Louise, stated this time that she had in fact spoken to Ortega's trial counsel, Johnson, on the first day of Ortega's trial about testifying about Ortega's alibi. But she said that Johnson advised her that her testimony would not be believable to a jury without some sort of corroborating evidence that Ortega had been at her home on the night of Lawson's murder.

The state again moved to dismiss Ortega's petition. The circuit court granted the petition, finding that Ortega had failed to make a substantial showing that his constitutional rights were violated. Ortega appealed. This time the Illinois appellate court affirmed, finding that Johnson's actions had not amounted to ineffective assistance of counsel. *See People v. Ortega*, 2017 IL App (1st) 151326-U, at ¶¶ 1-2, 19-23.

5

Specifically, it reasoned that the record "shows trial counsel was aware of the potential alibi testimony and decided not to call defendant's mother and sister as witnesses in light of defendant's testimony that he could not recall his whereabouts on the night the offense occurred." *Id.* ¶ 21. On this record, it concluded that Ortega had shown neither that Johnson was objectively deficient nor that any such deficiency had resulted in prejudice, as required by *Strickland v. Washington*, 466 U.S. 668 (1984). *See Ortega*, 2017 IL App (1st) 151326-U, at ¶ 19-26.

On May 22, 2018, Ortega filed this timely petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## Discussion

The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this Court's review. As the Seventh Circuit recently articulated:

> Habeas relief cannot be granted for persons in custody pursuant to a judgment of a state court unless the adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Czech v. Melvin*, 904 F.3d 570, 573 (7th Cir. 2018) (quoting 28 U.S.C. § 2254(d)). "A federal court may issue a writ of habeas corpus under the 'contrary to' clause of AEDPA if the state court applied a rule different from law set forth in Supreme Court precedent, or if it decides a materially indistinguishable case differently than the Supreme Court." *Sims v. Hyatte*, 914 F.3d 1078, 1087 (7th Cir. 2019). "A state court decision is an 'unreasonable application' if it correctly identifies the governing legal rule, but applies it unreasonably." *Id.*

In short, to obtain relief under section 2254(d), "a state prisoner must show that

6

the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). This is a notably deferential standard. *See id.* at 101.

Ortega contends that his constitutional rights were violated because (1) his conviction was supported by insufficient evidence; (2) his trial counsel was ineffective for failing to call an expert witness on the topic of eyewitness identification; (3) his trial counsel was ineffective for failing to investigate or call his mother and sister as alibi witnesses; and (4) the prosecution's closing argument violated due process.

**A.    Insufficient evidence**

First, Ortega claims that there was insufficient evidence to support the jury's conclusion that he was the man who shot Lawson. To prevail under *Jackson v. Virginia*, 443 U.S. 307 (1979), Ortega must demonstrate that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. The Illinois appellate court addressed this argument only in passing in its opinion affirming dismissal of Ortega's state postconviction petition, but this Court must nevertheless "determine what arguments or theories supported or, as here, could have supported, the state court's decision." *Harrington*, 562 U.S. at 102. Once it has surmised the appellate court's logic, the Court must then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court.]" *Id.*

The Court concludes that the Illinois appellate court did not apply *Jackson* unreasonably within that word's narrow meaning under AEDPA. At trial, the prosecution

presented two eyewitnesses who identified Ortega as the shooter. Willis and Howard were both present at the party on Houston Avenue on the night of the shooting. Both men testified that the street was well lit with street lights, porch lights, and the headlights of cars. They were with Lawson during and after the confrontation with the unnamed man in a bandana and both witnessed the man's short departure and subsequent return with the shooter. Likewise, both Willis and Howard testified that they saw the shooter draw a revolver and shoot Lawson once. Both witnesses identified Ortega as the shooter based on photo arrays—and, in the case of Howard, an in-person lineup. And, finally, both Willis and Howard identified Ortega as the shooter at trial.

When assessing whether a reasonable jury could have convicted under *Jackson* in the first instance, a court must assume that that jury drew all inferences and resolved all factual disputes in the prosecution's favor. *Branion v. Gramly*, 855 F.2d 1256, 1266 (7th Cir. 1988). Where, as here, a federal court is reviewing a state court's application of *Jackson* through section 2254(d)'s deferential lens, the petitioner's burden is even heavier. Because the Illinois appellate court did not unreasonably apply *Jackson* within the meaning of section 2254(d) when it implicitly rejected Ortega's insufficient-evidence argument, Ortega has not carried that heavy burden.

**B.    Ineffective assistance of counsel**

Next, Ortega alleges that his trial counsel, Johnson, was constitutionally deficient in two ways. First, he contends that Johnson failed to call an expert witness who could testify about the unreliability of eye-witness testimony like that offered by Howard and Willis. Next, Ortega contends that Johnson failed to investigate or call his mother and sister as alibi witnesses.

8

"The Sixth Amendment's right to the effective assistance of counsel provides . . . relief when counsel's performance was objectively deficient." *Swanson v. United States*, 692 F.3d 708, 714 (7th Cir. 2012) (internal quotation marks omitted). "To succeed on such a claim, [a petitioner] must show both that his attorney's performance was objectively deficient—in other words, that it fell outside the wide range of competent representation—and that he was prejudiced by the subpar representation." *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011); *see also Strickland*, 466 U.S. at 687-96. There is a presumption that counsel's conduct falls within the range of reasonable professional assistance. *Swanson*, 692 F.3d at 714.

In limited circumstances, counsel's conduct can give rise to a per se violation of the Sixth Amendment right to counsel. This occurs when counsel is not present at all or at critical stages; fails completely to cross-examine or subject the opposing case to the adversarial process; has an actual conflict of interest; or fails to file a requested appeal. *See Cole v. United States*, 162 F.3d 957, 958 (7th Cir. 1998) (citing *United States v. Cronic*, 466 U.S. 648, 658–61 (1984)). Because Ortega only offers a conclusory allegation that his counsel was per se ineffective, he must demonstrate that Johnson's performance was objectively deficient and that the deficiency prejudiced him. *See Jones*, 635 F.3d at 915. To demonstrate "prejudice," Ortega "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Ortega's claim is held to a yet more demanding standard because it does not present an ineffective assistance of counsel claim in the first instance but rather on

9

habeas review of a state court's determination. "The standards created by *Strickland* and [section] 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks omitted). Therefore, the determinative "question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Id.*

1. **Failure to call an eye-witness testimony expert**

Ortega first argues that Johnson's failure to call an expert witness on the unreliability of eye-witness testimony amounted to ineffective assistance of counsel. The Illinois appellate court did not grapple with this argument. A trial attorney's decision to call—or to forego—an expert witness is, as with any other witness, typically a matter of strategy. In *Harrington*, for instance, the Supreme Court concluded that defense counsel's decision to forego use of an expert in blood evidence "was at least arguabl[y]" reasonable, even though blood evidence was key to the prosecution's case. *See Harrington*, 562 U.S. at 106-07. The Court explained that:

> From the perspective of Richter's defense counsel when he was preparing Richter's defense, there were any number of hypothetical experts—specialists in psychiatry, psychology, ballistics, fingerprints, tire treads, physiology, or numerous other disciplines and subdisciplines—whose insight might possibly have been useful. An attorney can avoid activities that appear distractive from more important duties. Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies.

*Id.* at 107 (internal quotation marks omitted). Where a petitioner seeks to demonstrate ineffective assistance of counsel based on the failure to call an expert witness, he must therefore make a "specific, affirmative showing as to what the missing evidence or testimony would have been." *United States ex rel. McCall v. O'Grady*, 908 F.2d 170,

10

173 (7th Cir. 1990).

Here, as in *Harrington* and *McCall*, the appellate court reasonably concluded that Johnson's failure to call an expert witness on eye-witness testimony was not objectively deficient. Ortega has not shown what such an expert witness would have testified or that Johnson's failure to call one was so clearly constitutionally deficient as to overcome the presumption of competence and the high bar of section 2254(d).

### 2. Failure to investigate alibi witnesses

Ortega's next argument concerns his trial attorney's failure to investigate alibi witnesses. Ortega's mother and sister, Louise and Leticia Ortega, offered affidavits to accompany his initial postconviction petition that stated that he was at Louise's home with them on the night of Lawson's shooting. In these affidavits, Louise and Leticia asserted that attorney Johnson declined to speak to them about their testimony before trial. In a subsequent affidavit, Louise reiterated that she had never been interviewed by Johnson (either before or during the trial) but stated that she had spoken to him on the first day of Ortega's trial. She testified that on the morning of jury selection she had confronted Johnson about testifying and that he had told her that he would not call her as a witness unless she had documentary evidence to corroborate her account. *See* Ex. V, dkt. no. 10-22, at 9. Leticia's supplemental affidavit was similar, except that she says that Johnson never spoke to her. *See id.* at 11. Rather, she says she learned from Ortega himself that Johnson had decided not to call her because he believed she would not be credible due to her relationship with Ortega.

Applying *Strickland*, the Illinois appellate court concluded that Johnson's decision not to call Louise and Leticia was strategic and did not rise to the level of objective

11

deficiency. In view of Louise's subsequent affidavit and Johnson's arguments at trial, the court reasoned that Johnson was aware of Louise and Leticia Ortega's potential alibi testimony but opted instead to rely on arguments about Ortega's candor and credibility. *See Ortega*, 2017 IL App (1st) 151326-U, ¶¶ 20-21. Specifically, Johnson argued to the jury that Ortega's admission that he could not remember where he was on the night of the murder supported the conclusion that his testimony about his innocence was honest because he refused to fabricate fake alibi witnesses. *Id.* ¶ 21. The appellate court found that this strategic decision was not constitutionally deficient under *Strickland*'s first element.

Next, the appellate court held that, even if it were objectively deficient, Johnson's choice not to call Louise and Leticia Ortega did not sufficiently prejudice Ortega to entitle him to relief. *See id.* ¶ 22-23. It noted that, on direct appeal, the court had commented that the state had a "strong case" against Ortega, including two eyewitnesses who testified they had seen the shooter's face and both of whom had identified Ortega before and during trial. *Id.* ¶ 22. The appellate court stated that the proposed alibi testimony would have been afforded little weight and concluded that Ortega "has not demonstrated that the investigation and presentation of the alibi defense would have resulted in a different outcome at trial." *Id.* ¶ 23.

The Court concludes Ortega's claim may have merit and thus is inclined to appoint counsel. *See* 28 U.S.C. 2254(h) (providing for appointment of counsel). The Illinois appellate court's analysis of Ortega's alibi investigation claim under *Strickland* appears to have been lacking in two key ways. First, the court did not meaningfully address whether Ortega's counsel investigated the proposed alibi witnesses. Ortega

12

points to the affidavits from Louise and Leticia in which both contend that Johnson never interviewed them. Louise was only able to get Johnson to speak to her when she initiated a conversation with him on the day of the trial. Even then, Johnson allegedly waved her away and told her he had no reason to talk to her unless she had documentary evidence of Ortega's whereabouts on the night of Lawson's murder. The Illinois appellate court dealt with this argument in a single paragraph, citing an Illinois Supreme Court case for the proposition that counsel is not ineffective "for failing to call potential alibi witnesses where they were related to defendant and counsel reasonably could have concluded that their testimony was unreliable." *See Id.* ¶ 21 (citing *People v. Flores*, 128 Ill. 2d 66, 106-07, 538 N.E.2d 481, 497-98 (1989)).

Critically, however, the appellate court did not make a finding that Johnson had actually investigated the alibi witnesses or that his investigation (if any) was a reasonable basis on which to dismiss Louise and Leticia's testimony. Rather, the court reasoned that because Louise and Leticia's testimony was more confident than Ortega's about where he had been on the night of Lawson's murder—he said he could not recall his whereabouts—it was a strategic choice for Johnson not to call them as witnesses. But calling something a strategic decision does not relieve counsel of his duty to conduct a reasonable investigation or to make a reasonable decision, based on the circumstances of the case, that such an investigation is not necessary. *See Strickland*, 466 U.S. at 690-91 ("[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation"); *see also Flores*, 127 Ill. 2d at 105, 538 N.E.2d at 497 (suggesting that, if "failure to call the witnesses was the result of failure to investigate,

13

neglect, or incompetence," it would violate *Strickland*).

The Seventh Circuit has recently addressed this issue in the AEDPA context. In *Stitts v. Wilson*, 713 F.3d 887 (7th Cir. 2013), the court reasoned:

> The state court decision as well as the State's brief repeatedly emphasizes that an attorney's decision not to raise an alibi defense is generally considered a strategic decision entitled to substantial deference, a fundamental proposition we do not dispute. However, the main issue in this case is whether trial counsel's *investigation* of a potential alibi defense was sufficient under any reasonable application of *Strickland*. After all, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." If trial counsel's investigation of a potential alibi defense was unreasonably limited, then trial counsel's decision not to present an alibi defense is too ill-informed to be considered reasonable.

*Stitts*, 713 F.3d at 891-92 (quoting *Strickland*, 466 U.S. at 690-91) (some internal quotation marks and citations omitted). The Court of Appeals concluded in *Stitts* that the state court had applied *Strickland* unreasonably when it treated the question of whether counsel had conducted a reasonable investigation of a potential alibi witness as a dichotomous one. That is, the state court's choice to dispose of the issue by simply noting that the petitioner had "failed to show that trial counsel did not investigate his claimed alibi defense" was unreasonably perfunctory. *Id* at 892.

And *Stitts* is not alone in finding the sort of reasoning employed by the Illinois appellate court to be problematic. In *Brady v. Pfister*, 711 F.3d 818 (7th Cir. 2013), for instance, the Seventh Circuit described categorical dismissal of alibi testimony from family members as "deeply problematic" and stated that "the law does not demand, or even permit, the disregarding of their testimony just because they are close to the accused." *Id.* at 824. Likewise, in *Blackmon v. Williams*, 823 F.3d 1088 (7th Cir. 2016), the court noted that "the decision not to call a particular witness is frequently strategic,

14

insulated from attack on ineffective-assistance grounds," but held that "an outright failure to investigate witnesses . . . is more likely to be a sign of deficient performance." *Id.* at 1104 (internal quotation marks omitted).

*Raygoza v. Hulick*, 474 F.3d 958, 963-64 (7th Cir. 2007), offers yet more support for Ortega's perspective. There, a defense attorney opted not to interview a defendant's mother who offered alibi testimony about a party she said she had attended with the defendant. "As an abstract matter," the court wrote, "[the trial attorney] was surely correct to think that it is hard to win on an alibi defense." *Id.* at 963. "He may also have been correct to conclude that a defendant is in a weak spot if the only alibi witness he can offer is his mother, or perhaps just a mother and a girlfriend." *Id.* But such general assessments are not sufficient, the court concluded, because speaking with the defendant's mother could have changed the character of the defendant's case.

> Had [the attorney] gleaned the information from Maria about the evening party that was easily available for the asking, he would have learned that this was not a case where only the mother was willing to vouch for a defendant's alibi. To the contrary, witnesses both related and unrelated to Raygoza could have been called. A consistent story from all of them would have forced the trier of fact to confront the possibility that Raygoza had been mistaken for another young Hispanic male with a blond ponytail.

*Id.* Here, like in *Raygoza*, an investigation of Louise and Leticia's alibi testimony may have revealed evidence that changed the nature of Ortega's defense. For one, such an investigation conceivably might have revealed that a third witness with no direct family relation to Ortega was present in Louise's home on the night of Lawson's murder: Louise's then-boyfriend Benny.

Contrary to the state's position, *United States ex rel. Simmons v. Gramley*, 914 F.2d 1128 (7th Cir. 1990), does not compel denial. It is true that *Gramley* involved an

15

ineffective assistance of counsel claim based on a failure to investigate a defense. *Id.* at 1134-35. And, as here, the state argued that counsel's decision not to investigate an alibi was a strategic one and thus insulated from review. *Id.* But *Gramley* is different from this case in two ways. First, it involved only "cursory allegations" that counsel failed to pursue a defense. *Id.* at 1134. The petitioner did not include the sort of "sufficiently precise information" required to make out a claim for inadequate investigation. *Id.* at 1133. In contrast, this Court knows (as did the Illinois appellate court) the details of the defense that Ortega says his counsel failed to investigate. Second, and perhaps more importantly, *Gramley* involved a proposed defense that was directly contradictory to the defendant's trial testimony. "Certainly, once Simmons testified to one cause for the accidental firing of his pistol," the Seventh Circuit wrote, "he cannot now fault his attorney's decision not to pursue a different alibi defense." *Id.* at 1135. Here, of course, Ortega did not testify to facts that contradicted the accounts of Louise and Leticia. Rather, he testified that he could not remember where he was on the night of Lawson's murder. That testimony is not in the least bit inconsistent with the proposed alibi witnesses' accounts, which is more than enough to distinguish this case from *Gramley*.

The Court also has reservations about the Illinois appellate court's analysis of *Strickland*'s prejudice requirement. To demonstrate "prejudice," Ortega "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. But instead of applying *Strickland*'s prejudice standard, the Illinois appellate court appears

16

to have relied on case law applying the sufficiency of the evidence standard from *Jackson*, 443 U.S. at 319, discussed above. Specifically, it cited *People v. Smith*, 185 Ill. 2d 532, 541, 708 N.E.2d 365, 370 (1999), for the proposition that "[t]he testimony of a single witness, if it is positive and the witness credible, is sufficient to sustain a conviction." *Ortega*, 2017 IL App (1st) 151326-U, ¶ 22. True enough, as far as it goes, but the court's citation to the sufficiency of the evidence standard in place of *Strickland*'s prejudice requirement raises doubts about the reasonableness of its application of controlling law.

The Court is therefore persuaded that this piece of Ortega's ineffective assistance of counsel claim should not be denied outright. Instead, the Court will appoint counsel under 28 U.S.C. § 2254(h) to explore the viability of Ortega's claim, as well as whether an evidentiary hearing should be held. *See* 28 U.S.C. § 2254(e)(2); *Lee v. Kink*, 922 F.3d 772, 773-75 (7th Cir. 2019).

**C.     Closing argument**

Finally, Ortega also argues in general terms that the prosecution's closing arguments at trial—which included statements that Ortega was a "liar" and a "thinking criminal"—violated his due process rights. The Illinois appellate court did not reach this question on collateral review but rejected the argument as forfeited in its opinion affirming Ortega's conviction on direct appeal. *See* Ex. A to State Court Record, *People v. Ortega*, 369 Ill. App. 3d 1048, 932 N.E.2d 1038 (table), dkt. no. 10-1, at 11. Specifically, it held that because defense counsel did not object to these statements at the time they were made, the argument was forfeited. *Id.*

The state court's holding that this argument was defaulted as a matter of state

procedural rules bars this Court from considering the argument unless Ortega "can demonstrate the cause for the default and actual prejudice as a result of the alleged violation of federal law" or that he is actually innocent. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Beyond his ineffective-assistance arguments, discussed above, Ortega has made no attempt to show cause or prejudice that would permit this Court to look past the procedural default. Even if he had, it is unclear from the face of Ortega's petition and the record as a whole what precisely his constitutional complaint about the prosecution's closing argument is. He asserts that the prosecutors' statements prejudiced him, but he cites no authority for the proposition that impugning a testifying defendant's character for honesty without more is unconstitutional. To the contrary, the Seventh Circuit has held that "[a] comment on the defendant's credibility that is supported by the evidence is a hard blow, but a fair one. Where the character and credibility of the defendant are at issue and the evidence allows the inference that the defendant has been less than truthful, the prosecutor does not err in closing argument by referring to the defendant as a liar." *United States v. Turner*, 651 F.3d 743, 752 (7th Cir. 2011).

## Conclusion

For the foregoing reasons, the Court denies Ortega's petition for a writ of habeas corpus, with the exception of his ineffective assistance of counsel claim based on his trial attorney's failure to investigate alibi witnesses [dkt. no. 1]. By separate order, the Court will appoint counsel to pursue that claim. *See* 28 U.S.C. § 2254(h).

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 9, 2019