## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MICHAEL ORTEGA (R-40675),      )
     )
         Petitioner,      )      No. 18-cv-03631
     )
     v.      )
     )      Judge John F. Kness
ANTHONY WILLS,      )
     )
         Respondent.      )

## MEMORANDUM OPINION AND ORDER

Petitioner Michael Ortega, an Illinois prisoner at Menard Correctional Center, filed this habeas corpus action under 28 U.S.C. § 2254 challenging his 2004 Cook County murder conviction. (Dkt. 1.) Before the Court is Petitioner's motion for an evidentiary hearing, by which he seeks to develop evidence concerning his claim of ineffective assistance of trial counsel based on counsel's purported failure to investigate alibi evidence from Petitioner's mother and sister. (Dkt. 28; Dkt. 34; Dkt. 40.) For the reasons that follow, the Court holds that the Illinois court reasonably concluded that Petitioner's trial counsel did not render ineffective assistance. Petitioner is therefore not entitled to habeas relief. And because federal courts are, except in limited circumstances not present here, bound on habeas review to the factual record developed in the state courts, the Court similarly denies Petitioner's motion for an evidentiary hearing.

## I.     BACKGROUND

### A.     Petitioner's Trial and Direct Appeal

This case relates to Petitioner's first degree murder conviction for the shooting death of Kenneth Lawson in July 2003. (Dkt. 10-1 at 1–4) (*People v. Ortega*, 932 N.E.2d 1221 (Table) (Ill. App. Ct. Feb. 7, 2007)).[1] Petitioner was found guilty following a jury trial, and the state trial court sentenced Petitioner to 46 years of imprisonment.

As established at trial, between 10:30 and 11:00 p.m. on the evening of July 12, 2003, Lawson and his friend Jeremy Howard drove a van to a party on Chicago's south side. (Dkt. 10-1 at 1–2.) Once there, Lawson and Howard met another friend, Marlin Willis. (*Id.*) After driving to a liquor store and returning with a bottle of rum, Lawson parked his van. (*Id.* at 2.) Guests at the party mingled on the house's porch, in the area between the porch and the van, and in the van itself, the sliding door of which was open. (Dkt. 10-19 at 15–16, 104-05). A few hours later, a Hispanic man wearing a bandana walked by the party, threw up a gang sign, and said "Latin Kings" to Lawson. (Dkt. 10-1 at 2.) Lawson and the man argued. Although the argument did not involve physical violence, Howard stepped in to break it up. The man with the bandana then said he would return soon and told Lawson, Howard, and Willis they should not be there when he did. (*Id.*)

---

[1] This description of the trial evidence is taken from the direct-appeal opinion of the Appellate Court of Illinois (Dkt. 10-1), and from the trial transcript itself where necessary to fill in gaps. (Dkt. 10-18, 10-19, and 10-20.) Because facts recited in a state appellate court opinion are "presumptively correct on habeas review," this Court is entitled to rely upon them. *Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citing 28 U.S.C. § 2254(e)(1)).

Five minutes later, the man with the bandana returned, accompanied by another man, later identified by Howard and Willis as Petitioner. (Dkt. 10-1 at 2.) At that time, Lawson, Howard, and Willis were preparing to leave in the van. Lawson was in the driver's seat and Howard and Willis were standing by the open sliding door. (*Id.*) Howard and Willis testified that Petitioner and Lawson argued before Lawson exited the van and walked toward Petitioner. (*Id.*) Howard then walked up to Lawson, took Lawson by the arm, and dragged him back into the van. (*Id.*) Howard walked around the van to the sliding door, and Lawson then exited the van again and stated he was walking home. (*Id.* at 2–3.) Petitioner stood in front of the van when Lawson exited it a second time, and the two of them argued as Lawson was walking away. Petitioner then pulled a gun from his gym shorts and fired once at Lawson; after shooting at Lawson, Petitioner ran from the scene. (*Id.*) Lawson collapsed and was later pronounced dead at a hospital. (*Id.* at 3.)

Several weeks later, Howard was shown a photo array and identified Petitioner as the shooter. (*Id.*) On August 5, 2003, Howard viewed a physical lineup of four men that included Petitioner. Howard again identified Petitioner. (*Id.*) Another officer showed Willis a different photo array of six pictures, and Willis too identified Petitioner as the shooter. (*Id.*)

Both officers testified at trial. The officer who showed a photo array to Howard stated that he used a three-year old picture of Petitioner when creating the array, and that information with the photograph specified that Petitioner weighed 145 pounds at the time the photograph was taken. (*Id.*; *see also* Dkt. 10-19 at 202.) In the

photo array prepared for Willis by a different officer, the photograph of Petitioner stated that he weighed 200 pounds. (Dkt. 10-19 at 238, 242.)

Petitioner's defense at trial was that he was not at the scene of the shooting and that Howard and Willis mistakenly identified him. *People v. Ortega*, 2017 IL App (1st) 151326-U, ¶ 4 (Ill. App. Ct. 2017). Petitioner testified that, although he could not affirmatively remember where he was, he remembered where he was not: at or near the shooting. (Dkt. 10-20 at 19–20.) During closing arguments, Petitioner's trial counsel stated that Petitioner's testimony was sincere, that he "had ample opportunity to create an alibi if he wanted to," but that most people cannot remember where they were on a particular evening "unless it is a special day . . . [;] a birthday or a holiday." (*Id.* at 105); *Ortega*, 2017 IL App (1st) 151326-U, ¶ 4. A jury found Petitioner guilty, and he was sentenced to 46 years' imprisonment. (*Id.* ¶ 5.)

On direct appeal, Petitioner argued that the evidence against him was insufficient; his trial counsel was ineffective for failing to call an expert witness about the fallibility of identification testimony; and that the prosecutor engaged in prosecutorial misconduct by calling Petitioner a "liar" and a "thinking criminal" during closing arguments. (Dkt. 10-1 at 4–12.) Rejecting all three claims, the Appellate Court of Illinois (the "Appellate Court") affirmed. (*Id.*) Petitioner filed a petition for leave to appeal in the Supreme Court of Illinois and asserted the same claims, but that court denied the petition. (Dkt. 10-7; Dkt. 10-8.)

### B.     Petitioner's Postconviction Proceedings

Petitioner filed a state postconviction action and asserted, among other things, that his trial counsel was ineffective for failing to investigate whether to call Petitioner's mother (Louise Ortega) and sister (Leticia Ortega) as alibi witnesses. (Dkt. 10-21 at 35–140.) Shortly after filing the petition, Petitioner submitted signed affidavits from his mother and sister in which both indirectly stated that Petitioner was at his mother's house on the night of the shooting. (Dkt. 10-22 at 7–11.) The state trial court dismissed that petition in its first stage of review.[2] (Dkt. 10-21 at 141.) But the Appellate Court reversed and remanded for further proceedings. *See Ortega*, 2017 IL App (1st) 151326-U, ¶¶ 8–9. On remand, the trial court appointed counsel for Petitioner; counsel then filed a supplemental petition with new affidavits from Louise and Leticia. (Dkt. 10-23 at 64–67.)

Louise's supplemental affidavit stated that Petitioner was living with her at the time of the shooting. (*Id.* at 64.) Louise remembered that Petitioner was home on the night of the shooting because of an incident involving her daughter Leticia following Leticia's baby shower. When Louise and her then-boyfriend Benny Avila

---

[2] Illinois' post-conviction process provides for three stages of review. 725 ILCS 5/122-1, *et seq.* At the first stage, the state trial court "review[s] the postconviction petition, without input from the State, and determine[s] whether it is 'frivolous or is patently without merit.' " *People v. House*, 2021 IL 125124, ¶ 16 (quoting 725 ILCS § 5/122-2.1(a)(2)). At the second stage, "counsel may be appointed to represent the petitioner . . . the State may file responsive pleadings," and the trial court determines if the petition makes "a substantial showing of a constitutional violation." *Id.* at ¶ 17 (citing 725 ILCS §§ 5/122-4, 122-5). If a petition makes it beyond stage two, the trial court conducts an evidentiary hearing to decide if the petitioner has established a constitutional violation at stage three. *Id.* at ¶ 17 (citing 725 ILCS § 5/122-6).

argued, and Benny tried to hit Louise, Leticia jumped in to protect her mother. Leticia then complained to Petitioner about failing to intervene. (*Id.*)

Louise also explained that she conveyed this information to Petitioner's counsel during a conversation in late 2003 or early 2004, while they were both at the criminal courthouse. (*Id.*) In response, according to Louise, counsel neither asked Louise any questions nor requested to speak with her daughter. Nor did counsel use an investigator or consult with Louise about using one. (*Id.* at 64–65.) Instead, Louise recalls, counsel "said the only thing that would help was if I had some receipt that would prove where my son . . . was." (*Id.* at 64.)

Leticia's supplemental affidavit similarly recalls her baby shower on July 12, 2003. Leticia remembered that she and her young son spent the night at her mother's house, and that Avila was there until he and Louise argued and then he left. (*Id.* at 66–67.) According to Leticia, she and her mother stayed up talking until 2:00 a.m., when Leticia asked Petitioner to move from the couch to a loveseat so Leticia could sleep. Petitioner moved to the loveseat and was still there when she awoke later that morning. (*Id.*) Both Louise and Leticia stated they would have been willing to testify at Petitioner's trial. (*Id.* at 64–65, 67.)

The state trial court denied Petitioner's supplemental postconviction petition at the second stage of review—before the stage that would have included an evidentiary hearing (Dkt. 10-23 at 76–83)—and the Appellate Court affirmed. *Ortega*, 2017 IL App (1st) 151326-U. Both courts determined that Petitioner could not

establish his ineffective assistance of counsel claim. *Id.* at ¶¶ 20-23; (Dkt. 10-23 at 80–83); *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Of particular importance here, the Appellate Court[3] determined that trial counsel was aware of the availability of Louise and Leticia's alibi testimony but chose not to call them. *Ortega*, 2017 IL App (1st) 151326-U, ¶ 21. Instead, counsel chose to have Petitioner testify that he could not remember his location on the night of the shooting and to then emphasize Petitioner's candor during closing argument by telling jurors that Petitioner could have created an alibi but chose not to. *Id.* That court held that the decision of trial counsel decision was strategic and noted that "Illinois courts have long recognized that it is a reasonable trial strategy for counsel to forego presenting the testimony of family members." *Id.* (citing *People v. Flores*, 538 N.E.2d 481, 497–98 (Ill. 1989)).

As to *Strickland*'s prejudice prong, the Appellate Court determined that, because the "proposed testimony of [Petitioner's] mother and sister would have been afforded little weight," Petitioner "ha[d] not demonstrated how the proposed testimony would outweigh the testimony of the two State's witnesses, who had an unobstructed view of defendant and witnessed the offense at close proximity in a well-lit area." *Id.* at ¶ 23. Petitioner presented his ineffective assistance claim to the Supreme Court of Illinois, but the court denied leave to appeal. (Dkt. 10-15; Dkt. 10-16.)

---

[3] This Court's discussion focuses on the state appellate decision since federal courts "look to . . . the 'last reasoned state–court decision'" addressing the claim on the merits. *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (quoting *Johnson v. Williams*, 568 U.S. 289, 297 n.1 (2013)).

### C.    Petitioner's Section 2254 Petition

Following the conclusion of proceedings in the Illinois courts, Petitioner, acting *pro se*, filed the present petition under 28 U.S.C. § 2254. (Dkt. 1.) Petitioner asserted four claims: (1) the trial evidence was insufficient to support his conviction; (2) trial counsel was ineffective for failing to call an expert witness to testify about the unreliability of eye-witness testimony; (3) trial counsel was ineffective for failing to investigate and call Petitioner's mother and sister as alibi witnesses; and (4) the prosecutor made inappropriate, inflammatory remarks during closing argument. (*Id.*) This case initially was assigned to another judge in this District, who denied Claims One, Two, and Four in a written opinion. (Dkt. 16.)

As to Claim Three (the only remaining claim), the Court's earlier opinion questioned the reasonableness of the Appellate Court's decision, which rested, in part, on the premise that it is not unreasonable for an attorney to forego using testimony from family members "because it would be afforded little weight." (Dkt. 16 at 13). As the Court explained (by the previously assigned judge), the Appellate Court never found that Petitioner's trial counsel "actually investigated the alibi witnesses," and the Court noted that the Seventh Circuit has criticized state courts for relying on a presumption that alibi testimony from close family members is so inherently weak that defense counsel need not investigate it. (Dkt. 16 at 14–15.)

But the Court's earlier opinion left open whether the Appellate Court's decision was an unreasonable application of *Strickland* or an unreasonable determination of facts. *See* 28 U.S.C. § 2254(d). Instead, the Court held that the "ineffective assistance

of counsel claim should not be denied outright" and thus appointed counsel for Petitioner "to explore the validity of [the] claim, as well as whether an evidentiary hearing should be held." (Dkt. 16 at 17.) Appointed counsel then filed the pending motion for seeking an evidentiary hearing. (Dkt. 17; Dkt. 28.)

## II. DISCUSSION

### A. Before Determining if an Evidentiary Hearing Should Be Held, This Court Must Decide if Petitioner Satisfies 28 U.S.C. § 2254(d).

Petitioner's motion for an evidentiary hearing begins by arguing that he meets both the statutory and judicially created requirements for such a hearing. (Dkt. 28 at 10–12.) Petitioner then contends that 28 U.S.C. § 2254(d) does not prevent federal habeas relief in this case. (*Id.* at 12–21.) But Petitioner's approach—considering whether to allow an evidentiary hearing and then addressing whether Section 2254(d) prevents federal habeas relief—pays insufficient heed to the requirements of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, the Court must first address whether the state court's denial of Petitioner's ineffective assistance claim was unreasonable under Section 2254(d). Only if the Court makes such a finding can it then decide whether to hold an evidentiary hearing.

Under Section 2254(d), when a state court decides the merits of the constitutional claim being asserted in a Section 2254 petition, relief is unavailable unless the state court decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) was based on an unreasonable determination of facts in the light of the state court record. 28 U.S.C. §§ 2254(d)(1),

(2). A federal court cannot consider new evidence not presented to the state court when conducting its Section 2254(d) analysis: as the Supreme Court recently reiterated, AEDPA "restricts the ability of a federal habeas court to develop and consider new evidence." *Shoop v. Twyford*, 142 S. Ct. 2037, 2043 (2022) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)). Review "of factual determinations under Section 2254(d)(2) is expressly limited to 'the evidence presented in the State court proceeding,' " and "review of legal claims under §2254(d)(1) is also limited to the record that was before the state court." *Id.* at 2043–44.

Because the Appellate Court addressed the merits of Petitioner's ineffective assistance of counsel claim, federal habeas relief is unavailable if the state court's decision was reasonable. When determining reasonableness, this Court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181–82; *see also Westray v. Brookhart*, 36 F.4th 737, 754 (7th Cir. 2022) ("no federal evidentiary hearing is permitted when the state court has already addressed the issue," and that court's adjudication was reasonable under Section 2254(d)).

It is true that state courts may not "insulate their decisions from federal review by refusing to entertain vital evidence." *Lee v. Kink*, 922 F.3d 772, 775 (7th Cir. 2019). A state court's "refusal to consider evidence can render its decision unreasonable" for purposes of Section 2254(d). *Id.* But "an evidentiary hearing may be needed" only if

Section 2254(d) does not otherwise bar relief. *Stechauner v. Smith*, 852 F.3d 708, 722 (7th Cir. 2017).[4]

That approach to be taken by a federal court—namely, reviewing the state court's adjudication of a claim under Section 2254(d) before determining whether to accept new evidence—comports with AEDPA's goal of promoting comity, finality, and federalism. *Pinholster*, 563 U.S. at 185; *see Shinn v. Ramirez*, 142 S. Ct. 1718, 1730–31 (2022).[5]

Because the state courts decided the merits of the ineffective assistance claim, the Court must first determine whether Section 2254(d) prevents federal habeas relief before deciding whether to conduct an evidentiary hearing to receive additional evidence not presented to the state court.

---

[4] The post-AEDPA structure of Section 2254 itself sets out the path a state prisoner must follow to obtaining federal habeas relief. First, he must fully and fairly present his constitutional claim to the state courts or show why state court remedies are inadequate. *See* 28 U.S.C. §§ 2254(b), (c). Sections 2254(d) and (e)(1) then provide the review standards binding federal courts when addressing a state court's adjudication of those claims. Only if Section 2254(d) does not bar relief can a state prisoner seek to introduce new evidence under Section 2254(e)(2), which has its own separate requirements.

[5] Petitioner's contention that "a petition for a writ of habeas corpus shall be granted if the state court's adjudication on the merits" was unreasonable under Section 2254(d), *see* Dkt. 28 at 8, is inaccurate. Section 2254(d) is not a means of obtaining federal habeas relief but rather a hurdle. Whether the petitioner is entitled to relief under Section 2254(a) when "he is in custody in violation of the Constitution or laws or treaties of the United States . . . is a separate question" from whether the state court's decision was unreasonable under Section 2254(d). *Mosley*, 689 F.3d at 853. Only when a federal court addresses the merits of the claim under Section 2254(a), as opposed to the reasonableness of the state court's adjudication of the claim under Section 2254(d), may it consider new evidence under Section 2254(e)(2), which has its own set of requirements, mainly that the prisoner attempted to develop the evidence in state court. *Id.*; *see also Lee*, 922 F.3d at 773 ("a federal court may hold an evidentiary hearing if, through no fault of petitioner's, the state-court record lacks essential facts").

**B.    Petitioner Cannot Satisfy the Requirements of Section 2254(d).**

*1.    Standard of Review*

Relief is not available to habeas petitioners "with respect to any claim that was adjudicated on the merits in a State court proceeding unless" the claim resulted in "a decision that was contrary to" or involved "an unreasonable application of" clearly established federal law or resulted in a decision that was based on an "unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d). This Court applies this standard to the "last reasoned state-court decision" addressing the claim, *Dassey*, 877 F.3d at 302 (quoting *Johnson*, 568 U.S. at 297 n.1), which, in this case, is the Appellate Court's decision affirming the denial of Petitioner's second postconviction appeal. *Ortega*, 2017 IL App (1st) 151326-U.

Neither party argues that the Appellate Court's decision is contrary to clearly established federal law. A state-court decision is "contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases" or "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). The appellate court correctly stated the familiar two-prong standard for an ineffective assistance of counsel claim. *Ortega*, 2017 IL App (1st) 151326-U, ¶ 19 (quoting *Strickland*, 466 U.S. at 687-88, 694). Moreover, this Court is not aware of any decision of the Supreme Court based on materially indistinguishable facts that nonetheless arrived at a

different result. Petitioner, therefore, cannot satisfy the "contrary to" standard of Section 2254(d)(1).

To establish that the Appellate Court's decision "involved an unreasonable application of" *Strickland* under Section 2254(d)(1), Petitioner must demonstrate that the decision is not only incorrect but "objectively unreasonable." *Felton v. Bartow*, 926 F.3d 451, 464 (7th Cir. 2019) (citing *Wiggins*, 539 U.S. at 520; *Williams*, 529 U.S. at 411). Unreasonable in this context means "lying well outside the boundaries of permissible differences of opinion." *McGhee v. Dittmann*, 794 F.3d 761, 769 (7th Cir. 2015) (citation omitted). That high bar requires a state prisoner to show that the state court's ruling on the claim being presented in federal court is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). With respect to ineffective assistance of counsel claims, so long as the Court is "satisfied that the [state appellate court] took the constitutional standard seriously and produce[d] an answer within the range of defensible positions," it should deny the writ. *Felton*, 926 F.3d at 464; *see Morgan v. Hardy*, 662 F.3d 790, 800–01 (7th Cir. 2011) (To demonstrate an unreasonable determination of facts under Section 2254(d)(2), Petitioner must show that the state appellate court decision ignored "the clear and convincing weight of the evidence.").

Considering Section 2254(d)'s deferential standard, Petitioner could not establish that his trial counsel provided deficient performance or that the absence of the alibi testimony prejudiced his defense. (Dkt. 28 at 8–21). Both *Strickland* prongs

must be established to succeed, and "failing to prove either element defeats [the] claim." *Winfield v. Dorethy*, 956 F.3d 442, 452 (7th Cir. 2020); *Strickland*, 466 U.S. at 694. Based on the present record, the Appellate Court's determination that the performance of Petitioner's counsel did not meet the *Strickland* test was reasonable.

### 2. Deficient Performance

To establish deficient performance, a petitioner "challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 688). That requires a petitioner to identify errors serious enough to find that counsel failed to function as counsel as guaranteed "by the Sixth Amendment." *Dunn v. Jess*, 981 F.3d 582, 591 (7th Cir. 2020) (cleaned up). Separately, the Court must apply the deferential presumption that strategic judgments made by counsel are reasonable to "avoid the inevitable temptation to evaluate a lawyer's performance through the distorting lens of hindsight." *Dunn*, 981 F.3d at 591 (quoting *Mosley v. Atchison*, 689 F.3d 838, 848 (7th Cir. 2012)).

Strategic choices made after a less-than-complete investigation are reasonable "to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. Decisions such as who to call as witnesses, what objections to make, and which arguments to advance are usually considered strategic choices for counsel. *McCoy v. Louisiana*, 138 S. Ct. 1500, 1509 (2018) (citing *Gonzalez v. United States*, 553 U.S. 242, 249 (2008)); *see Carter v.*

*Duncan*, 819 F.3d 931, 942 (7th Cir. 2016) (a "lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review") (quotation omitted).

Petitioner's challenge to his counsel's decision not to call Louise or Leticia as witnesses relies on the premise that counsel failed to investigate their alibi. Citing portions of Louise and Leticia's affidavits, Petitioner contends that the "evidence presented to both the state trial and appellate court establishes that [counsel] performed no investigation into the alibi defense" but instead "summarily dismissed both alibi witnesses because they were Ortega's mother and sister and leapt to the conclusion that no one would believe them." (Dkt. 28 at 14.)

This Court's earlier decision dismissing most of Petitioner's claims explained that Louise "had never been interviewed by [counsel] (either before or during the trial)" and that she "was only able to get [counsel] to speak to her when she initiated a conversation with him on the day of the trial." (Dkt. 16 at 13.) Even then, counsel "allegedly waved her away and told her he had no reason to talk to her unless she had documentary evidence of Ortega's whereabouts on the night of Lawson's murder." (*Id.*) (citing Dkt. 10-22 at 9).

Upon further review of the record, and with the benefit of the parties' submissions, the Court now finds that the Appellate Court reasonably determined that counsel's decision not to call Louise or Leticia was strategic and, therefore, did not constitute ineffective assistance of counsel. Louise spoke with counsel about Leticia's and her proffered testimony on the morning of trial, to be sure, but that was not the first time counsel was presented with the proposed evidence. In her

15

supplemental affidavit, obtained after the Appellate Court remanded Petitioner's postconviction petition for further proceedings, Louise stated that she had two conversations with counsel. (Dkt. 10-23 at 64–65.) Louise first spoke with counsel in late 2003 or early 2004 (months before the trial in November 2004), and again on the morning of jury selection. (*Id.*)

In its written opinion, the Appellate Court addressed counsel's conversation with Louise. *Ortega*, 2017 IL App (1st) 151326-U, ¶ 10. After describing the conversation between Louise and counsel and noting that "[t]he decision whether to call particular witnesses is a matter of trial strategy and thus will not ordinarily support an ineffective-assistance-of-counsel claim," the Appellate Court determined that "trial counsel was aware of the potential alibi testimony and decided not to call defendant's mother and sister as witnesses in light of defendant's testimony that he could not recall his whereabouts on the night the offense occurred." *Ortega*, 2017 IL App 1st) 151326-U, ¶¶ 20–21. That decision was, in the Appellate Court's view, strategic for a variety of reasons. Among other things, calling Louise or Letitia would have conflicted with counsel's chosen trial strategy of attempting to maintain credibility with the jury, and the decision not to call family members as alibi witnesses is long-established as a reasonable trial strategy under Illinois law. *Id.* This explanation by the Appellate Court shows that the court considered the trial record and the proffered evidence, as well as relevant Supreme Court of Illinois precedent, before concluding that "trial counsel's performance in this respect was not constitutionally deficient." *Id.* (citing *Flores*, 128 Ill. 2d at 106–07).

16

Counsel has a duty to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 690–91. Petitioner's counsel may not have "investigated" the alibi evidence, in the sense that he neither contacted Louise nor employed an investigator to do so. But the relevant substance was provided to counsel months before trial when Louise summarized her daughter's and her alibi evidence "in great detail." (Dkt. 10-13 at 9). Counsel explained to Louise that, without corroborating evidence, the alibi testimony of close family members would be of limited value. (Dkt. 10-13 at 7). Counsel did inquire into Louise's offer to testify: he asked her if there was anyone besides Louise and Leticia—two family members whose credibility could have hurt Petitioner's case—who could attest to the alibi.

Because only family members were present during the events described by Louise and Leticia, it is unclear what further investigation by counsel could have revealed. Equally important, Petitioner himself did not claim the alibi as his own, thus limiting the usefulness of Louise and Leticia's testimony and suggesting that additional investigation would be pointless.

More broadly, the requirement that counsel conduct a reasonable pre-decision investigation seeks to ensure only that counsel "make[s] an informed decision" before trial. *Blackmon v. Williams*, 823 F.3d 1088, 1103 (7th Cir. 2016) (citing *United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005)). Petitioner's construction of the rule, however, would turn the requirement into a tool for grading counsel's performance years after trial and in the abstract. Because such a post-hoc inquisition is neither

required nor supported under governing law, and because further investigation was not necessary for Petitioner's counsel to identify the strategic pros and cons of Louise's proffered testimony, counsel's decision not to call Louise and Leticia was a permissible strategic choice.

More to the point, the Appellate Court's *decision* that counsel was not ineffective, a decision to which AEDPA says this Court owes deference, was not unreasonable in the light of the record showing that Louise explained her daughter's and her potential testimony to Petitioner's counsel months before trial. That decision neither unreasonably applied *Strickland* nor involved an unreasonable determination of fact. *See* 28 U.S.C. § 2254(d). Put another way, the Court finds that there is no possibility "fairminded jurists" could agree that the Appellate Court's decision "conflicts with [the] [Supreme] Court[] precedents" on ineffective assistance of counsel. *Harrington*, 562 U.S. at 102. On the contrary, the Appellate Court, which routinely considers direct appeals of murder convictions and as a result has significant and wide-ranging exposure to the performance of trial counsel in murder cases, took the "constitutional standard seriously and produce[d] an answer within the range of defensible positions." *Felton*, 926 F.3d at 464. Petitioner thus cannot meet the "doubly deferential" standard of Section 2254(d) on the question of his trial counsel's performance. *Harrington*, 562 U.S. at 105 ("The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.") (internal citations omitted).

Petitioner's inability to establish deficient performance, by itself, means that his petition for habeas corpus relief based on the ineffective assistance of counsel must be denied. *See Winfield*, 956 F.3d at 452. As explained below, however, Petitioner also fails to show that the Appellate Court acted unreasonably in concluding that Petitioner could not meet the prejudice requirement under *Strickland*.

### 3. *Prejudice*

When addressing *Strickland*'s prejudice requirement, a court must consider the evidence that would have been presented at trial "but for counsel's unprofessional error" along with the "the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 694–95. The issue is not whether the defendant is innocent or would have been acquitted, "but instead whether he would have had a 'reasonable chance' of acquittal." *Blackmon*, 823 F.3d at 1105 (quoting *Stanley v. Bartley*, 465 F.3d 810, 814 (7th Cir. 2006)). A reasonable probability is one "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

In this case, the Appellate Court, in finding a lack of prejudice, recognized that it had previously found on direct appeal that the State presented "a strong case" against Petitioner given the multiple eyewitnesses. (Dkt. 10-3 at 8). This conclusion, in particular with regard to the identification testimony from eyewitnesses Howard and Willis, is supported by the record. *See generally* (Dkt. 10-19 at 26–152). Both witnesses testified that they saw the shooter while they were near him on a well-lit street. Both identified Petitioner as the shooter at trial and in photo arrays shown to

them by police officers within weeks after the shooting. And at trial, the jury was shown pictures of the street where the shooting occurred. (*Id.*) Based on this record, the state Appellate Court's characterization of the prosecution's case as "strong," *see Ortega*, 2017 IL App (1st) 151326-U, ¶ 22, was reasonable. *See*, *e.g.*, *Woods v. Schwartz*, 589 F.3d 368, 378 (7th Cir. 2009) (holding no prejudice under *Strickland* because "at trial, two eyewitnesses is very strong evidence of guilt").

In contrast to the eyewitness testimony offered at trial, the Appellate Court emphasized the light weight afforded under Illinois law to the proffered testimony of Petitioner's family members. *Ortega*, 2017 IL App (1st) 151326-U, ¶¶ 22–23. Although alibi evidence from a close relative to a defendant cannot be wholly discounted, *see Brady*, 711 F.3d at 824, a court can consider that relationship in assessing the value of purported alibi testimony. *See Raygoza*, 474 F.3d at 963 (trial counsel "may . . . have been correct to conclude that a defendant is in a weak spot if the only alibi witness he can offer is his mother, or perhaps just a mother and a girlfriend"); *see also Stitts*, 713 F.3d at 894 ("[f]or instance, if Stitts's father claimed that Stitts was having a one-on-one dinner with him at the time of the shooting, and trial counsel concluded that the father would make a poor witness, then it could be reasonable to end the alibi investigation at that point").

Although the proffered alibi testimony from Petitioner's mother and sister could not be completely discredited, the Appellate Court did not act unreasonably when it determined that the purported alibi testimony from Petitioner's mother and sister, when weighed against the strong eyewitness testimony offered at trial, would

not have led to a reasonable probability of a different outcome.[6] *Strickland*'s prejudice standard, of course, must include a consideration of the strength or weakness of the prosecution's case at trial. *See Mosley*, 689 F.3d at 850 ("a verdict . . . only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support") (quoting *Strickland*, 466 U.S. at 696); *see also Blackmon*, 823 F.3d at 1106 ("We begin . . . with the weakness of the State's case."); *Smith v. Brown*, 2012 WL 3704976, at *8 (S.D. Ind. Aug. 27, 2012) ("The weight of the evidence is a key consideration in conducting the prejudice inquiry under *Strickland*."). In view of the record developed in the state proceedings, the Court cannot say that the Appellate Court's determination on the prejudice question was contrary to, or amounted to an unreasonable application of, clearly established federal law.

Petitioner can establish neither that the state appellate court's decision was contrary to or involved an unreasonable application of either *Strickland's* deficient performance or prejudice standards. Nor, as the record supports the state court's findings, can he demonstrate that the decision involved an unreasonable

---

[6] Petitioner's motion for an evidentiary hearing also seeks testimony from Avila. (Dkt. 28 at 16.) But Petitioner never argued to the state courts that his trial attorney should have called or investigated Avila as an alibi witness. (*See generally* Dkt. 10.) Nor does the state record reflect that Petitioner attempted to develop evidence with respect to Avila. (*Id.*) Petitioner thus cannot satisfy the requirements of Sections 2254(b) and (e)(2) regarding Avila. But even if the Court could allow Petitioner to develop new about potential alibi evidence from Avila, both Louise and Leticia's initial affidavits reflect that Avila left Louise's house at around 12:30 a.m., about an hour before the shooting. (Dkt. 10-22 at 8, 11.) Witnesses can and do say more than what is in their affidavits, *Lee*, 922 F.3d at 775, but the Supreme Court has made clear that "'[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.'" *Pinholster*, 563 U.S. at 186. Petitioner's speculations about Avila's testimony neither warrant an evidentiary hearing nor cause the Court to alter its analysis.

determination of facts. Because Petitioner cannot satisfy the requirements of Section 2254(d), an evidentiary hearing is neither needed nor appropriate under Section 2254(e)(2). Petitioner's motion for an evidentiary hearing is therefore denied.

### C.     Appellate Rights and Certificate of Appealability

If Petitioner seeks to appeal this decision, he must file a notice of appeal in this Court within 30 days of the date final judgment is entered on the Court's docket. In the Court's view, Petitioner cannot make a substantial showing of the denial of a constitutional right, nor can he show that reasonable jurists would debate, much less disagree with, this resolution of his claims. For these reasons, the Court declines to issue a certificate of appealability. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (*citing* 28 U.S.C. § 2253(c)(2)); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## III.    CONCLUSION

Petitioner's motion for an evidentiary hearing and petition under Section 2254 are denied. The Clerk of Court is directed to: (1) substitute Anthony Wills, Warden of Menard Correctional Center, as Respondent in place of Jacqueline Lashbrook; and (2) alter the caption of this case to *Ortega v. Wills*. A final judgment order will be entered separately.

SO ORDERED in No. 18-cv-03631.

Date: September 27, 2022

JOHN F. KNESS
United States District Judge